IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DE GRANDE LIVING TRUST DATED APRIL 1, 2994, BY DOYLE H. BECK AND LYNN E. BECK, TRUSTEES, | ) ) ) | Case No. CV-07-220-E-BLW |
| | ) | **MEMORANDUM** |
| Plaintiff, | ) | **DECISION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| WORLD SAVINGS BANK, FSB, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## INTRODUCTION

This case arises out of a borrower's unsuccessful attempts to make an early pay-off of a loan.  Plaintiff De Grande Living Trust Dated April 1, 1994, claims that the Defendant World Savings Bank ("WSB") wrongfully refused two tenders of payment which caused the plaintiff to pay interest, and other fees and costs, that were not owed to the bank.  Plaintiff brings claims for breach of contract, violations of the Idaho Consumer Protection Act, an accounting and attorney's fees.  Defendant denies liability on all claims.  Defendant responds, in part, that Plaintiff failed to tender the full amounts due and owing on the loan on both occasions, and therefore, Defendant rightfully returned the amounts tendered.

**Memorandum Decision and Order - 1**

Defendant also contends that the Idaho Consumer Protection Act does not apply to banks.

Currently pending before this Court are Plaintiff's Motion for Partial Summary Judgment on Plaintiff's contract claims (Docket No. 15) and Defendant's Motion for Summary Judgment on all "breach of contract and Idaho Consumer Protection Act claims," (Docket No. 20). Also pending is Plaintiff's unopposed Motion to Strike Affidavit in Opposition to Motion (Docket No. 28). The Court heard oral argument on December 19, 2008, and took these matters under advisement.  After careful consideration of the parties' arguments, the Court issues the following decision.

## FACTUAL BACKGROUND

The following facts are undisputed.  Doyle and Lynn Beck are Trustees of the Plaintiff trust.   In November 2004, Mr. Beck spoke with Tyler Kramer, a broker for Americor Lending Group, Inc., about a loan that WSB could offer to Mr. Beck.  Mr. Beck continued shopping for a loan and observed that interest rates were rising. In January 2005, Mr. Beck spoke again with Mr. Kramer, who informed Mr. Beck that WSB could offer Mr. Beck an adjustable loan with an interest rate that was calculated as the sum of a margin of 3.700% plus a Certificate of Deposit Index (CODI) rate from November 2004 of 1.451%.  Mr.

**Memorandum Decision and Order - 2**

Beck told Mr. Kramer that he (Mr. Beck) was interested in WSB's loan.

Mr. Beck received a Conditional Loan Approval and a Commitment Letter, dated January 21, 2005, from WSB. *See Beck Affid. MSJ Response,* Exhs. A and C (Document 26). WSB's Conditional Loan Approval directed Mr. Beck to contact the broker, Americor, with any questions about the approval. The Commitment Letter also instructed Mr. Beck to contact Americor "with any questions pertaining to the commitment and your decision to approve or decline our offer." (Document 26, Exh. C). The Commitment Letter further set forth, as Mr. Kramer indicated, an "Initial Interest Rate" of 5.15%, "Current Index Value" of 1.451%, and a "Margin" of 3.700%. *Id.*

Mr. Beck also received a Loan Program Disclosure from WSB. *Id.,* Exh. B. The Disclosure explained that WSB determines interest rate changes for the loan "by adding an amount (margin) that is fixed for the life of the loan to the current Index." *Id.* It further stated:

> The current Index is the most recently announced Index value available on the date of each interest rate change. Please ask for World's current margin and interest rate.

*Id.* Based on the Loan Commitment Letter he received from WSB, and his conversations with Mr. Kramer, Mr. Beck understood that the "current Index" applicable to his loan would be the November 2004 CODI rate. *Id.* at ¶ 14.

**Memorandum Decision and Order - 3**

Doyle and Lynne Beck, as trustees of the Trust, signed the Adjustable Rate Mortgage Note ("Note") dated January 26, 2005. The Note was payable to WSB, in the principal amount of $448,500.00.  The Note was a form document provided to Plaintiff by WSB, and contains only a signature line for the "Borrower(s)" – and no signature line for the bank or lender.  *See Affidavit of Doyle H. Beck* dated 7/31/08 *(*Document No. 18) (hereafter, *"Beck Affid.*"), Exh. A, p. 6.

Section 2 of the Note sets out the "Interest Rate" provisions.  *See Beck Affid.*, Exh. A, pp. 1 - 2.  It provides that the initial interest rate would be 5.15%, and "may change" on the 15th of each month ("Interest Change Date") starting on March 15, 2005, according to a formula calculated by adding the Margin (3.700 percentage points) to the "Current Index." *Id.*  at § 2(E).  The Current Index is defined as "the most recent Index figure available on each Interest Change Date." *Id.* at § 2(D).  The Note further provides that the Lender, in its sole discretion, may choose an alternative index to be the applicable Index if the Index is not "available" as further defined by the terms of the Note.  *Id.* at § 2(F).

Section 5 of the Note provides a Pre-payment penalty should the borrower pay the loan off, or make certain pre-payments, within the first three years of the loan.  Specifically, it states:

**Memorandum Decision and Order - 4**

5.      BORROWER'S RIGHT TO REPAY
        I HAVE THE RIGHT TO MAKE PAYMENTS OF
PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE.  A
PAYMENT OF PRINCIPAL BEFORE IT IS DUE IS CALLED A
"PREPAYMENT".  WHEN I MAKE A PREPAYMENT, I WILL
TELL THE LENDER IN WRITING THAT I AM DOING SO.  THE
LENDER MAY REQUIRE THAT ANY PARTIAL
PREPAYMENTS BE MADE ON THE DATE MY REGULARLY
SCHEDULED PAYMENTS ARE DUE.  IF I MAKE A PARTIAL
PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE
DATES OR AMOUNT OF MY REGULARLY SCHEDULED
PAYMENTS UNLESS THE LENDER AGREES TO THOSE
CHANGES IN WRITING.  I MAY PAY DEFERRED INTEREST
ON THIS NOTE AT ANY TIME WITHOUT CHARGE AND
SUCH PAYMENT WILL NOT BE CONSIDERED A
"PREPAYMENT" OF PRINCIPAL.  DURING THE FIRST 3
YEARS OF THE LOAN TERM IF I MAKE ONE OR MORE
PREPAYMENTS THAT, IN THE AGGREGATE, EXCEED $5,000
IN ANY CALENDAR MONTH, I MUST PAY A PREPAYMENT
CHARGE EQUAL TO 2% OF THE AMOUNT SUCH
PREPAYMENTS EXCEED $5,000 IN THAT CALENDAR
MONTH.  AFTER THE FIRST 3 YEARS OF THE LOAN TERM, I
MAY MAKE A FULL OR PARTIAL PREPAYMENT WITHOUT
PAYING ANY PREPAYMENT CHARGE.

*See Beck Affid.*, Exh. A, p. 3 (Docket No. 18, p. 8).  In the blank spaces provided

on the form immediately below this type-face provision, Mr. Beck wrote, at the

time that he signed the Note, "See Attached Fax Ltr. DHB."  *Beck Affid.*, ¶ 3 &

Exh. A, p. 3 (Docket No. 18).

The "Attached Faxed Ltr" Mr. Beck referenced in Section 5 is an undated

letter from Mr. Kramer, the broker.  *Supplemental Affid. of Doyle H. Beck* ("Beck

**Memorandum Decision and Order - 5**

Supp. Affid."), ¶¶ 3 -7 (Docket No. 22, p. 2) (hereafter, "Kramer Letter").  The

Kramer Letter states, among other things, "If you want to pay off your loan you

[sic], you are able to do so as long as you do not refinance within the first three

years." *Beck Supp. Affid*., Exh. A (Doc. No. 22).   Mr. Beck received the Kramer

Letter in response to prior correspondence that Mr. Beck had faxed to Mr.

Kramer, stating:

> Tyler,
> As per our telcon, I must have three things before this loan will be
> signed.
> 1 -- The payment amounts for the options.
> 2-- There is no "Pre Payment" penalty if I reduce payment with my
> own money - only if I Refinance.
> 3 -- I will pay no more than 5000.00 in Fees.
> Doyle

*Beck Affid.*, Exh. C (hereafter, "Fax Cover Letter").  Only the second letter, the

Kramer Letter, was referenced and attached to the Note.  *See Beck Supp. Affid., ¶* 5.

In December 2006, less than three years from the date of the Note, Mr. Beck

requested and received a Pay-off Statement from WSB.  *Beck  Affid.*, ¶ 6, Exh. D.

The Pay-Off Statement included a principal amount of $432,675.78, per diem

interest of $103.10 through December 14, 2006, a recording fee of $6.00, a

"Demand Statement Fee" of $40.00, a "Pre-Payment Fee" of $8,553.52 and "Fax

Fee" of $10.00.  *See Undisputed Material Fact*, No. 5 (Document No. 17).  The

**Memorandum Decision and Order - 6**

Pay-Off Statement expired on December 14, 2006.  *Id.*

 Mr. Beck wired funds in the amount of $435,465.48 to WSB on December

12, 2006, which included the principal amount, per diem interest through December

12, 2006, and the $6 recording fee listed on the Pay-Off Statement.  It did not

include the Pre-Payment Fee, Demand Fee or Fax Fee.

 The next day, December 13, 2006, Mr. Beck spoke to a WSB employee

regarding the use of the funds deposited with WSB.  Following the conversation,

Mr. Beck indicates that he faxed a letter to WSB, which states:

> As per our telcon, you refused to request what you want in writing:
>
> "Do Not Return the wire"
>
> You know there is a dispute about prepayment penalty.  You may
> classify this payment as a Paydown or whatever else you want.  Do
> Not Return it.
>
> /s/

*Undisputed Material Fact*, No. 7; *Beck Affid.*, Exh. 7 ("December 13 Fax Cover

Sheet").  WSB has no record in its imaged file of having received this fax from Mr.

Beck.  *See Affid. of Sharon L. Mason in Opposition to Plaintiff's Motion for

Summary Judgment* (hereafter, "*Mason Affid.*"), ¶ 5.  On 14, 2006, WSB returned

the entire $435,465.48 wired funds to Mr. Beck.  *Undisputed Material Fact*, No. 8.

 On December 27, 2006, Mr. Beck sent a letter and a cashier's check in the

amount of $10,253.12 to WSB by UPS overnight mail.  *Undisputed Material Fact*,

**Memorandum Decision and Order - 7**

No. 9.  The letter confirmed that WSB had returned the first wire, and advised that

Mr. Beck had not received an updated pay-off statement that he requested.  *See*

*Beck Affid.*, Exh. G, Letter dated 12/27/2008 to Attn: Payoff Dept.  It further

instructed WSB that the cashier's check in the amount of $10,253.12:

> in addition to the funds re-wired by Smith Barney[,] should be the
> amount you consider necessary for total payoff of the loan.
> This payment is under protest and with the reservation of any and all
> rights for legal recourse against your company.
> In the event you do not consider this payment in full I expect you to
> immediately apply the funds as pay down of my loan and advise me
> accordingly with  any outstanding balances.
> Please advise.
> /s/

*Id.* (Doc. 18).  On December 28, Beck  re-wired the $435,465.48 to WSB.  WSB

applied the cashier's check funds to  pay down the principal owed on the Note but

again returned the $435,465.48 wire to Mr. Beck, on December 29, 2006.  WSB

provides no explanation for having  returned the wire funds rather than applying

them to pay-down the Note as it had done with the cashier's check funds.

The Trust paid the Note off in full on March 10, 2008.[1]  From the first

attempted pay-off on December 12, 2006, and the second attempted pay-off on

December 28, 2006, the Trust paid, respectively, $43,518.22 and $41,231.20 in

---

[1] Since three years had elapsed, there was no pre-payment penalty imposed.   During oral
argument, counsel indicated that the Trust waited until this date to make a third effort at paying
off the loan because the three year pre-payment penalty period had elapsed.

**Memorandum Decision and Order - 8**

interest.

## MOTION FOR SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise

**Memorandum Decision and Order - 9**

properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255. If a claim requires clear and convincing evidence, the issue on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

**Memorandum Decision and Order - 10**

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor.  *Id.* at 256-57.  The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists.  *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment."  *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)).  Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts."  *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).  Statements in a brief, unsupported by the record, cannot be used to create an issue of fact.  *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396, n.3 (9th Cir. 1995).

## ANALYSIS

**A.    Unopposed Motion to Strike Affidavit in Opposition to Motion for Summary Judgment**

Plaintiff has requested that the Court, pursuant to Federal Rules of Civil Procedure 12(f) and 56(e), strike Defendant's Affidavit of Sharon L. Mason in

**Memorandum Decision and Order - 11**

Opposition to Plaintiff's Motion for Partial Summary Judgment ("Mason Affid.").

Defendant argues that the Mason Affidavit is not based on Ms. Mason's personal

knowledge, consists of inadmissible hearsay and does not include or attach sworn

or certified copies of the documents to which Ms. Mason refers in her affidavit.

*Motion to Strike*, p. 1 (Docket No 28).

Defendant filed no response to Plaintiff's motion to strike. Under this Court's

*Local Rules of Practice*, Civil Rule 7.1, the Court may deem the Defendant's

failure to respond as consent to granting the motion.  The Court declines to do so,

and will considers the Motion to Strike on its merits.

Only admissible evidence may be considered in ruling on a motion for

summary judgment.  *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir. 2002);

*see also* Fed. R. Civ. P. 56(e).  In determining admissibility for summary judgment

purposes, it is the contents of the evidence rather than its form that must be

considered.  *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).  If the

contents of the evidence could be presented in an admissible form at trial, those

contents may be considered on summary judgment even if the evidence itself is

hearsay.  *Id*. (affirming consideration of hearsay contents of plaintiff's diary on

summary judgment because at trial, plaintiff's testimony of contents would not be

hearsay).

**Memorandum Decision and Order - 12**

The Ninth Circuit "has repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir.1988).  Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit.  *Id.*  The affidavit must contain testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document.  *Id.*

Rule 56(e) of the Federal Rules of Civil Procedure states:

A supporting of opposing affidavit must be made on personal knowledge, set out facts would be admissible in evidence, and show that the affiant is competent to testify on the matter stated.  If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached or served with the affidavit.

"When a party opposing summary judgment fails to comply with the formalities of Rule 56, a court may choose to be somewhat lenient in the exercise of its discretion to deal with the deficiency." *School District No. 1J, Multnomah County, OR v. ACandS, Inc.*, 5 F.3d 1255, 1261 (9th Cir. 1993) (citation omitted).  Such leniency, however, cannot be exercised so that Rule 56 becomes meaningless.  *Id.*

Ms. Mason states in her affidavit that she is an Assistant Vice President of the Defendant bank, and that she makes her affidavit on personal knowledge.  She states that she derived the information set forth in her affidavit from several

**Memorandum Decision and Order - 13**

different sources: 1) her own review of the bank's "imaged file" of the loan file, 2) World Savings' review of "our records concerning the subject loan," and 3) her coordination with the bank's Pay-Offs Department.

Ms. Mason's affidavit fails to attach a sworn copy of any of the bank's "imaged file," original file or other "records" to which she refers.  Accordingly, the affidavit fails to comply with the technical requirements of Federal Rule of Civil Procedure 56(e).  The Court examines the contents of the affidavit, including the significance of the missing documents to the affiant's testimony, further to determine whether the affidavit should be excluded on this basis.  *See id.*

Ms. Mason also states that, upon her personal review of the "imaged file," she found no record that the bank received Mr. Beck's December 13, 2006 fax instructing WSB to apply the wired funds to pay-down the loan.  To the extent Ms. Mason's affidavit is offered to identify the content of WSB's "imaged file," her affidavit is admissible.  Fed. R. Evid. 602.  *See Londigran v. Federal Bureau of Investigation*, 670 F.2d 1164, 1174 (C.A.D.C. 1981) (affiant competent to testify to personal observations upon review of documents.)

Ms. Mason, however, makes further statements that appear to be based on her reading of notes or documents contained within the file.  She states that "the imaged file reflects that on December 14, 2006, the funds were returned to Mr.

**Memorandum Decision and Order - 14**

Beck because World Savings Bank had not received written instructions regarding those funds." *Mason Affid.*, ¶ 5.  Likewise, Ms. Mason states, "Between December 14, 2006 and December 28, 2006, World Savings' records do not indicate that Mr. Beck (or anyone else for that matter) ever requested an updated Pay-Off Demand after the December 8, 2006 Pay-Off Demand had expired on December 14, 2006 and, notably, the $10,253.12 was not tendered pursuant to any "live" Pay-Off Demand."[2]  Ms. Mason offers the absence of the bank's record of receiving certain correspondence as proof that the bank did not receive the correspondence.  While "[t]he absence of a record of an event that would ordinarily be documented in official records is probative of the fact that the event did not occur," *Wiley v. United States*, 20 F.3d 222, 227 (6th Cir. 1994), offered as such, the absence in the record is hearsay.  Fed. R. Evid. 801.  Ms. Mason's Affidavit fails to lay proper foundation for any potentially applicable exception to the hearsay rule.  *See, e.g.,* Fed. R. Evid. 803(6) & (7).  Accordingly, these statements would be inadmissible as evidence at trial and cannot be considered here.

---

[2]  She also states in her affidavit that she found no record that the Bank received a second wire transfer in the amount of $435,465.48.  *Mason Affid.*, ¶ 6.  However, Defendant filed a *Supplemental Affidavit of Sharon L. Mason In Opposition To Plaintiff's Motion for Partial Summary Judgment ("Suppl. Mason Affid.")* (Docket No. 27) in which she concedes that, after further search of additional bank records, she was able to confirm that the bank did in fact receive the second wire, and returned it. *Suppl. Mason Affid.*, ¶¶ 2 - 3.  Copies of the bank's record of the wire transmissions were attached.  *Id.*

**Memorandum Decision and Order - 15**

Ms. Mason also identifies in her affidavit what the Trust's actual pay-off amount would have been at the time of its second pay-off attempt on December 28, 2006.  She states that she "coordinated with the Worlds Savings Pay-Offs Department and retroactively created the amount that would have been due to pay the subject loan in full on December 28, 2006." *Mason Affid.*, ¶ 7.   In so doing, she "determined that the total amount due to pay off the loan on December 28, 2006 would have been $446,398.85." If Ms. Mason had made the calculation herself – setting forth the documents she relied upon and the method of her calculation – her testimony would have been admissible.  However, Ms. Mason's testimony appears to be based, at least in part, upon what someone else told her the retroactive calculation of the pay-off would be.  As such, her testimony is inadmissible hearsay.   And, without further foundation as to her method of calculation, Ms. Mason is not competent to testify to the pay-off amount.   Therefore, her testimony as to the retroactive pay-off amount would not be admissible at trial and may not be considered in deciding the motion for summary judgment.

If the Court had a sworn copy of the imaged file, or other records, upon which Ms. Mason relies for her testimony, and could determine whether the bank could offer the foregoing evidence at trial in an admissible form, it may exercise leniency in considering the hearsay testimony.  The Court cannot make this

**Memorandum Decision and Order - 16**

determination based on Ms. Mason's affidavit alone. Accordingly, the referenced documents are significant to Ms. Mason's testimony, and Defendant's failure to attach sworn or certified copies to the affidavit cannot be overlooked.

Based on the foregoing, the Court grants Plaintiff's Motion to Strike in part, and denies it in part. The Affidavit will be considered with regard to Ms. Mason's observation that the bank's imaged file does not contain a copy of the December 13, 2006 fax from Mr. Beck instructing the bank to use the wire-funds to pay-down the loan. It will be excluded in all other respects.

## B.   Cross Motions for Summary Judgment on Contract Claims

Plaintiff moves for summary judgment on Claim I (breach of contract - first tender), and Claim II (breach of contract - second tender). The resolution of Claim I turns largely upon Plaintiff's contention that the pre-payment penalty provision in Section 5 of the Note was not part of the parties' contract. Plaintiff alleges that the Note was amended by Mr. Beck's hand-written reference ("See Attached Fax Ltr") to Mr. Kramer's letter, so that the Trust could pay-off of the loan early without a pre-payment penalty, so long as it was not refinancing the loan. Under this view, the Trust tendered the full amount due and owing on the loan with its wire transfer of $435,465.48 on December 12, 2006, WSB had a duty to accept the tender, and its failure to do so constituted a violation of the contract.

**Memorandum Decision and Order - 17**

Plaintiff claims that even if the pre-payment penalty did apply so that Plaintiff failed to tender the full amount due and owing on the Note, WSB nonetheless violated the contract by ignoring Mr. Beck's specific instruction, as set forth in the December 13, 2006 fax, not to return the wire but to apply the funds to pay down the principal amount due.

Alternatively, Plaintiff argues that it is entitled to summary judgment on Claim II of the Amended Complaint for breach of contract relating to the second tender on December 28, 2006. The second attempted pay-off, on December 28, 2006, included rewiring the same amount of funds as Mr. Beck had previously wired, and sending a certified cashier's check in an amount of $10,253.12 for all of the fees Mr. Beck originally omitted, as well as additional interest from December 14, to the date of the second wire, calculated pursuant to the December 8, 2006, pay-off statement. As such, Plaintiff argues that even if the pre-payment penalty does apply, there is no question of fact that Plaintiff tendered all of the amounts due and owing on Note on December 28, 2006, and that WSB breached the contract by wrongfully rejecting the tender. Again, Plaintiff makes the additional argument that even if the tender was somehow deficient, WSB breached the contract by again ignoring Mr. Beck's written instructions to apply the funds to pay-down the loan (Letter dated December 27, 2006, enclosing cashier's check;

**Memorandum Decision and Order - 18**

*Beck Affid.*, Exh. G).

Defendant cross-moves for summary judgment on Plaintiff's two breach of contract claims.  Defendant argues that it is entitled to summary judgment because there are no facts evidencing that WSB agreed to Mr. Beck's hand-written "pre-payment penalty modification" of Section 5 of the Note, or that Mr. Kramer, the loan broker, was WSB's agent who could bind WSB to the proposed "modification."  Under Defendant's view, Mr. Beck's suggested modification did not become part of the contract.  Accordingly, Defendant argues, with respect to Plaintiff's first tender, that because the wired funds did not include the pre-payment penalty,  Plaintiff failed to tender the full amount due on the Note, and  WSB had no choice but to return the funds.  WSB claims it has no record of having received requested written instructions to apply the funds to pay down the principal. (*Mason Affid*., ¶ 5).

WSB further argues that the second tender was also ineffective, as it was short by $680.25.  *See Mason Suppl. Affid.,* ¶  3.  Accordingly, WSB returned the wired funds.  *Id.*  Defendant provides no explanation for why it applied the cashier's check funds to the principal amount due on the loan, but then failed to apply the wired funds.

**1.      Whether the Pre-payment penalty provision is part of the**

**Memorandum Decision and Order - 19**

**contract raises a genuine issue of material fact in Claim I.**

As noted above, Plaintiff, when presented with a WSB form "Adjustable Rate Mortgage Note, Pick-A-Payment Loan," inserted the language "See Attached Fax Ltr...DHB," and then signed the note. *Undisputed Material Fact*, No. 1 & 2. He returned the executed Note, with the inserted language, to WSB. Defendant makes no contention and presents no evidence that WSB objected to, or questioned, Plaintiff's hand-written insertion. WSB funded the loan, which Plaintiff paid off in full on March 10, 2008. *Undisputed Material Fact*, No. 13.

The parties, while agreeing about the events which led to the execution and funding of the load, disagree about their legal effect. Plaintiff argues that WSB's form Note was an "offer" for a loan; that Plaintiff's hand-written insertion under Section 5 transformed the original document into a counter-offer; and that WSB accepted the counter-offer by funding the loan. On the other hand, Defendant argues that the Note is a "unilateral promise" by Plaintiff to pay WSB, which Plaintiff could not "amend" or "modify" without WSB's express agreement; that there is no indication that WSB agreed to the modification; and that Tyler Kramer, the broker, did not have the authority to bind WSB to any modification.

The Court finds Plaintiff's analysis persuasive. Regardless of whether the

**Memorandum Decision and Order - 20**

Note was a unilateral contract, or a bilateral contract, it was a promise to pay by the borrower *pursuant to the terms of the Note*.  Both unilateral and bilateral contracts may be accepted by performance.  *See generally* 2 Williston on Contracts, § 6;2 (4th ed.)   By definition, a unilateral contract is accepted only by performance.  *See Deer Creek, Inc. v. Clarendon Hot Springs Ranch, Inc.*, 107 Idaho 286, 688 P.2d 1191 (Ct. App. 1984) *(citing* A. Corbin, Corbin on Contracts, § 21 at 52 (1963)). There is no dispute that WSB performed by funding the loan.  WSB's performance thus constituted acceptance of the Trust's counter-offer.  *See id.*; *Commercial Ventures, Inc. V. Rex M. & Lynn Lea Family Trust*, 145 Idaho 208, 177 P.3d 955 (2008);  *cf. Smith v. Boise Kenworth Sales*, 102 Idaho 63, 625 P.2d 417 (1981) (applying UCC rule that acceptance may be any reasonable means unless otherwise unambiguously stated by offeror); *see also Sharp Electronics Corp. v. Deutsche Financial Services Corp.*, 216 F.3d 388 (4th Cir. 2000) (regarding notes and unilateral and bilateral contracts generally, and  noting that at any time before agreement to finance, borrower can alter terms of offer and bank can refuse to finance under new terms); 2 Williston on Contracts, §  6:26 (4th ed.).  Accordingly, the Court agrees with Plaintiff that there is no question of fact that precludes the Court from finding as a matter of law that WSB accepted the terms of the Note by funding the loan.

**Memorandum Decision and Order - 21**

Having determined that the language inserted by Mr. Beck into the Note became part of the parties' contract, the Court must address the effect of the inserted language. The primary objective in construing a contract is to determine the intent of the parties. In order to accomplish this objective, the Court must construe the contract as a whole, and give meaning to all of the provisions of the writing to the extent possible. *See Selkirk Seed Co. v. State Insurance Fund*, 135 Idaho 434, 18 P.3d 956, 959 (2000); *Luzar v. Western Surety Co.*, 107 Idaho 693, 692 P.2d 337 (1984); *Beal v. Mars Larsen Ranch Corp.*, 99 Idaho 662, 586 P.2d 1378, (1978); *Bennett v. Bliss*, 103 Idaho 358, 647 P.2d 814 (Ct. App. 1982).

Where the contract language is clear and unambiguous, the meaning and legal effect of the contract is a matter of law for the Court to decide from the plain meaning of the contract's words. *See First Security Bank of Idaho v. Murphy,*131 Idaho 787, 964 P.2d 654, 658 (1998); *Rath*, 123 Idaho 30, 844 P.2d 12; *Clements Farms, Inc. v. Ben Fish & Son*,  120 Idaho 185, 814 P.2d 917 (1991); *Galaxy Outdoor Advertising, Inc. v. Idaho Transportation Dept.*, 109 Idaho 692, 710 P.2d 602 (1985); *Wood v. Simonson*,108 Idaho 699, 701 P.2d 319, 322 (Ct. App. 1985). On the other hand, if a contract is ambiguous, the meaning and legal effect of the contract is a question of fact which may be determined from extrinsic facts. *See Albee v. Judy*, 136 Idaho 226, 31 P.3d 248, 252 ( 2001). It is only if the extrinsic

**Memorandum Decision and Order - 22**

evidence of the parties' intent is not conflicting, that the court may determine the parties' intended meaning of the ambiguous terms from such evidence. *See Molyneux v. Twin Falls Canal Co*, 54 Idaho 619, 35 P.2d 651 (1934).  Otherwise, the parties' intent is generally a question of fact reserved for the jury. *See Albee*, 31 P.3d at 252.

The determination of whether a contract is, or is not, ambiguous is a question of law for the court to decide. *See Rath v. Managed Health*, 123 Idaho 30, 844 P.2d 12 (1992)*; Bondy v. Levy*, 121 Idaho 993, 829 P.2d 1342 (1992); *Wooden v. First Security Bank, N.A.,* 121 Idaho 98, 822 P.2d 995, 997 (1991); *Ramco v. H-K Contractors, Inc.*, 118 Idaho 108, 794 P.2d 1381, (1990); *De Lancey v. De Lancey*, 110 Idaho 63, 714 P.2d 32 (1986); *Pocatello Industrial Park Co. v. Steel West, Inc.*, 101 Idaho 783, 621 P.2d 399 (1980);  *Prouse v. Ransom*, 117 Idaho 734 ,791 P.2d 1313 (Ct. App. 1989).  A contract is ambiguous if it is subject to reasonable conflicting interpretations. *Spencer-Steed v. Spencer*, 766 P.2d 1219, 115 Idaho 338 (1988); *De Lancey,* 714 P.2d 32, 110 Idaho 63.

In this case, Plaintiff argues that the hand-written insertion below the type-face of Section 5 – "See Attached Faxed Ltr . . . DHB" – unambiguously means that the Pre-penalty provision did not apply, so long as the Trust did not refinance the loan.  Defendant offers no other interpretation of the inserted language or the

**Memorandum Decision and Order - 23**

referenced document. Nor does defendant argue that the language is "non-sensical." *See First Security Bank of Idaho v. Murphy*, 131 Idaho 787, 964 P.2d 654, 658 (1998).  Defendant instead argues that the Court should ignore the handwritten insertion in the Note, and the attached Letter, or find that both are unambiguous in that they do *not* reference the pre-payment penalty, and, therefore, do not change the type-written pre-payment penalty provision. *World Savings Bank's Response Memorandum to Plaintiff's Motion for Partial Summary Judgment,* p. 7 - 11 (Docket No. 23).

The Court finds that a reasonable interpretation of the language inserted into the promissory note is that the Plaintiff may "pay-off the loan [without a pre-payment penalty] so long as he does not refinance in the first 3 years." *See Beck Affid.*, Exh. G.  On the other hand, the Court finds unpersuasive Defendant's argument that the inserted language fails to modify the pre-payment clause in any way because it does not include the words "pre-payment penalty." Such an argument renders the insertion and the referenced letter meaningless.  Since Defendant offers no other reasonable interpretation of the language, the Court could find the provision unambiguously modified the pre-payment penalty provision as a matter of law. *See Swanson v. Beco Const. Co., Inc.*, 145 Idaho 59, 175 P.3d 748 (2007) (finding contract term unambiguous and noting that defendant

**Memorandum Decision and Order - 24**

failed to present evidence as to alternative definition of disputed term);  *Prudy v. Farmers Ins. Co. of Idaho*, 138 Idaho 443, 447, 65 P.3d 184, 188 (2003) ("Absent a reasonable alternative interpretation, the provision is not ambiguous.")

Although the Defendant has not put forth an alternative reasonable interpretation and the Court has some difficulty assigning any other meaning to the inserted language, the Plaintiff's own submissions suggest an ambiguity in the parties' understanding.   In Mr. Beck's Supplemental Affidavit, he states, "To be properly understood, the Kramer Fax Letter and the Fax Cover Letter should be read together."  *Beck Supp. Affid.*, ¶ 8 (Docket No. 22).  The Fax Cover Letter, however, does not appear to have been attached to the Note or otherwise provided directly to WSB.  WSB alone, if not acting through Mr. Kramer, would not have had the benefit of both documents to "properly understand" the meaning of the language.

Mr. Kramer, who is alleged to have been acting as WSB's agent, authored the second faxed letter in response to Mr. Beck's fax confirmation, and may have meant to confirm that the pre-penalty provision of Section 5 would not apply so long as the Trust did not refinance the loan during the applicable time period. However, as discussed below, whether Mr. Kramer was acting as WSB's agent such that WSB would be charged with Mr. Kramer's knowledge, understanding or

**Memorandum Decision and Order - 25**

intent with respect to the loan is a question of fact.[3]  Accordingly, the Court finds

that the intended meaning of the hand-written provision is likewise a question of

fact more properly reserved for the jury.

> **2.**     **Whether WSB received Mr. Beck's December 13, 2006 fax letter instructing WSB to use the wired funds to pay-down the loan is a question of fact precluding summary judgment on Claim I.**

Plaintiff argues that even if the pre-payment penalty applied to Plaintiff's

loan, and the  December 12, 2008, tender was not effective, WSB breached the

contract by failing to apply the wire funds in the amount of $435,465.48 to pay-

down the principal on the loan.

Section 5 of the Note provides that the borrower may instruct that a pre-

payment be applied to principal.  *See Beck Affid.*, Exh. A at p. 3, § 5.   The Note

requires this instruction be given in writing.  *Id.*  On December 13, 2006, pursuant

to the bank's request, Plaintiff faxed a letter to a WSB employee, stating:

> As per our telcon, you refused to request what you want in writing.
> "Do Not Return the wire"
> You know there is a dispute about pre-payment penalty.  You may
> classify this payment as a paydown or whatever else you want.  Do
> Not Return it.        /s/

---

[3]  While the presence of an ambiguous term generally presents a question of fact regarding the parties' intent, it may also raise an issue as to whether there was a meeting of the minds on the term, and if such term is material, whether the contract is enforceable as a matter of law.  *See Griffith v. Clear Lakes Trough Co., Inc.*, 143 Idaho 733, 737, 152 P.3d 604, 608 (2007).  This issue has not been raised in these pleadings, and would nonetheless present further questions of fact,  including Mr. Kramer's alleged status as WSB's agent.

**Memorandum Decision and Order - 26**

The bank contends that it has no record of having received this fax. *Mason Affid.*, ¶¶ 3 - 5. Ms. Mason's affidavit does not state that the bank did not receive the fax, or that she reviewed every possible file wherein the fax would be kept in the ordinary course of the bank's business, or even that she caused to be produced a record of the facsimile transmissions on that day. Instead, her affidavit states only that she found no record of the fax in the imaged file. *Id.* Even considering the bank's affidavit for this limited purpose only, the  bank's evidence disputing that the bank received the fax is barely more than a scintilla – particularly in view of the fact that Ms. Mason's record search has proven to be inconclusive at least once before. *See* n. 2, *supra*.

Nonetheless, as a respondent to a motion for summary judgment, Defendant is entitled to all reasonable inferences, and construction of the facts in its favor. The Court finds that Ms. Mason's inability to find the December 13, 2006 fax in WSB's records raises an issue fact as to whether the bank received the instructions to pay down the loan before returning the first wire.

For the reasons set forth above, the Court denies both Defendant's and Plaintiff's motions for summary judgment on Claim I.

> **3.      Plaintiff is entitled to summary judgment as a matter of law on Claim II for breach of contract because Defendant raises no genuine issue of material fact regarding its breach of  contract in**

**Memorandum Decision and Order - 27**

**failing to accept Plaintiff's second tender or to apply the wire transfer funds to pay down the principal on the loan.**

Plaintiff claims that it is entitled to judgment as a matter of law on Claim II for WSB's breach of contract in relation to the second tender on December 28, 2006.  Plaintiff requested an updated pay-off statement on December 27, 2006, but did not receive one.  It then attempted to pay off the loan by rewiring the original wire funds, and sending separately, a cashier's check in the amount of all of the previously excluded fees, plus the amount of additional interest which it calculated has accrued through the date of the second pay-off.  Plaintiff again instructed the bank in writing, in the letter enclosed with the cashier's check, to apply the funds to pay down the loan principal if the bank was not accepting the funds as payment in full.  *See Undisputed Material Fact*, Nos. 9 - 12.

Plaintiff argues that it is entitled to judgment as a matter of law because Defendant failed to produce evidence that Plaintiff's tender was not the amount due and owing, and even if the amount tendered was again insufficient, Defendant again breached the contract by failing again to apply the full amount of the tender to the principal amount of the loan.

Defendant argues that Plaintiff's tender of $445,718.60 was $680.25 less than what was due and owing on the loan, and that it was therefore justified in

**Memorandum Decision and Order - 28**

returning the wired funds.  Defendant provides no competent evidence disputing the pay-off amount Plaintiff tendered with the second tender.  Even if the amount tendered had been, as Defendant argues, short by $680.25, this fact alone would not excuse Defendant from accepting the tender.

The common law principle of tender is that "proper tender of the full amount of a debt, including then-accrued interest, terminated the running of contractual interest."  *Brinton v. Haight*, 125 Idaho 324, 870 P.2d 677 (Ct. App. 1994).  Idaho has codified the common law rule by adopting Article 3 of the Uniform Commerical Code, I.C. § 28-3-603 (1993 Supp.).

The Idaho Supreme Court defines "tender" as:

> Tender is the unconditional offer of a debtor to the creditor of the amount of his debt.  This means the real amount of the debt as fixed by the law, and the purpose of the law of tender is to enable the debtor to relieve himself of interest and costs and to relieve his property of encumbrance by offering his creditor all that he has any right to claim. *This does not mean that the debtor must offer an amount beyond reasonable dispute, but it means the amount due, - actually due.*

*Kelley v. Clark,*  23 Idaho 1, 12, 129 P. 921, 924 (1912); *see also Dorhman v. Tomlinson,*  88 Idaho 313, 318, 399 P.2d 255, 258 (1965); *Daniel v. O'Dell,*  129 Idaho 8, 12, 921 P.2d 185, 189 (Ct. App. 1996).  The general law of tender also requires that the creditor correctly state the amount due upon request:

> [I]f a debtor requests of a creditor a statement of the balance owing on

**Memorandum Decision and Order - 29**

his account, the creditor being in the sole possession of that information, and the creditor either neglects or refuses to disclose the correct amount owing, the debtor's tender of what he believes, in good faith, is owing is deemed sufficient, even if it is a smaller amount than that actually owed.

74 Am.Jur.2d Tender § 20, & n. 13 (cases cited therein).  *See also Daniel v. O'Dell*, 129 Idaho 8, 921 P.2d 185  (Holding that Plaintiffs waived claim of default by failing to give proper notice of amount due on Note.)

The Court finds that Plaintiff is entitled to summary judgment on Claim II for breach of contract based on WSB's rejection of Plaintiff's second tender. Defendant failed to put forth competent evidence that the amount Plaintiff tendered was not the amount due and owing.  Even if the Court were to consider the affidavit of Sharon Mason with the conclusory allegation that the Plaintiff's tender was short by $680.25, the Court finds that the shortage was attributable to the undisputed fact that WSB failed to provide Plaintiff with an up-dated pay-off statement, as requested.  Moreover, again, even if the Court were to consider Ms. Mason's affidavit, Defendant put forth no evidence that WSB made a timely objection to Mr. Mason's tender on that, or any other, basis.  *See Robert Hind, Ltd. v. Silva*, 75 F.2d 74, 78 (9th Cir. 1935) (*citing* 62 C.J. § 13) (Holding objection to tender must be made at time of tender or it is deemed waived.)

The Court finds, further, that Plaintiff is entitled to judgment as a matter of

**Memorandum Decision and Order - 30**

law on Claim II on the second ground it urges.  WSB offers no explanation or evidence setting forth any defense to its return of the wire funds to the Plaintiff a second time in spite of the December 27, 2006 letter instructing WSB to use the funds to pay-down the loan.  WSB does not dispute that it received the written instructions to use the funds to pay down the principal.  The pay-down  instructions were contained in the letter that was sent by UPS with the cashier's check, which WSB not only agrees it received, but also applied to the principal due on the loan as the letter instructed.

As such, WSB presents no disputed issue of fact as to whether Plaintiff was entitled to have the wire funds on deposit with the bank applied to the principal amount due on the loan pursuant to the terms of the Note.  The Court finds that Plaintiff is entitled to summary judgment on Claim II for WSB's failure to apply the total amount of $435,465.48, in addition to the $10,253.12, to the principal due on the loan at the time.

**C.  Defendant's Motion For Summary Judgment on Plaintiff's Consumer Protection Claims.**

Defendant moves for summary judgment on Claim V, which Plaintiff brings under the Idaho Consumer Protection Act, Idaho Code §§ 48-601 *et seq*.

**Memorandum Decision and Order - 31**

("ICPA").[4]  Plaintiff claims, among other violations of the ICPA, that WSB

misrepresented, or represented in a deceptive or misleading manner, the Certificate

of Deposit Index (CODI) rate that would apply to fixing the interest rate of the

loan.  *Amend. Cmplt.,* ¶ ¶ 54 - 72 (Docket No. 4).  Plaintiff alleges,

> Specifically, WSB knew, or in the exercise of due care should have
> known, that marketing its loan with an initial interest rate that lasted
> only one month and that was based on a  lower, outdated CODI from
> November 2004 instead of the higher, current CODI from January
> 2005, and then raising the interest rate on March 15, 2005, from the
> lower, outdated CODI from November 2004 to the higher, current
> CODI of March 2005 has the tendency or capacity to mislead
> consumers, including the "Trust, by creating the illusion of an interest
> rate on WSB's loan lower than WSB was in fact charging.

*Amend. Complt.,* ¶  71 (Docket No. 4, p. 11).

Defendant moves for summary judgment on this claim on the basis that the

interest rates WSB charged complied with the specific applicable terms of the

Note.  Defendant's *Memorandum in Support of Motion for Summary Judgment*, pp.

_____

[4]  Defendant's Motion for Summary Judgment states that Defendant is moving for
judgment on all of Plaintiff's claims brought under the Idaho Consumer Protection Act.
Defendant set forth facts and argument in its original motion for summary judgment, however,
only on Claim V. Defendant raised new arguments for summary judgment on the remaining
ICPA claims, as well as new arguments on Claim V,  in Defendant's Reply to its motion for
summary judgment.  Defendant's new arguments violate the Idaho Rules of Local Practice, Civil
Rule 7.1, Fed.R.Civ.P. 16 and the Court's scheduling Order of September 7, 2007.  Accordingly,
the Court will not consider them.  *See Local Rule* 7.1; Fed.R.Civ.P. 16 & 37.

**Memorandum Decision and Order - 32**

7 - 8 (Docket No. 20-2).  Plaintiff does not dispute that the rates charged complied

with the specific terms of the Note, but argues that WSB's conduct, both directly in

writing, and through its agent, Mr. Kramer, was nonetheless deceptive and/or

misleading under I.C. §  48-603(17).

Defendant states that Tyler Kramer was neither WSB's agent nor employee,

but instead acted as an independent contractor on behalf of a third-party, Americor

Lending Co., and that WSB "at no time communicated to [Plaintiff] that Mr.

Kramer was acting in an agency relationship on its [sic] behalf."  Defendant's

*Statement of Undisputed Material Facts*, nos. 1 - 3 (Docket No. 20-3).

The Court finds that questions of fact regarding Mr. Kramer's alleged agency

relationship to WSB, and the effect of WSB's written communications in

combination with Mr. Kramer's representations about the WSB's loan, preclude

summary judgment on this claim. "[T]he existence of an agency relationship is a

question for the trier of fact to resolve from the evidence."  *Hausam v. Schnabl*,

126 Idaho 569, 572, 887 P.2d 1076, 1079 (Ct. App. 1994) (citations omitted).

There are three types of agencies: express, implied and apparent authority.  *Id.*

(*quoting Bailey v. Ness*, 109 Idaho 495, 497, 708 P.2d 900, 902 (1985)); *see also*

*Podolan v. Idaho Legal Aid Services, Inc.*, 123 Idaho 937, 944, 854 P.2d 280, 287

(Ct. App. 1993).   Express authority is communicated between the parties; implied

**Memorandum Decision and Order - 33**

authority is that which is "necessary, usual, and proper to accomplish or perform the main authority expressly delegated to an agent." *Podolan*, 123 Idaho at 944, 854 P.2d at 287. Apparent authority "exists when the principal voluntarily places an agent in such a position where a person of ordinary prudence, conversant with the business usages and the nature of a particular business, is justified in believing that the agent is acting pursuant to existing authority." *Id. (citing Clark v. Gneiting*, 95 Idaho 10, 12, 501 P.2d 278, 280 (1972), *and Clements v. Jungert*, 90 Idaho 143, 152, 408 P.2d 810, 814 (1965)); *see also Hausam*, 126 Idaho at 572, 887 P.2d at 1079 (*quoting Bailey*, 109 Idaho at 497, 708 P.2d at 902).

Under Idaho law, a person relying on apparent authority may not rely on statements of the agent alone, and must "exercise reasonable diligence to ascertain the agent's authority." *Podolan*, 123 Idaho at 944, 854 P.2d at 287 (citations omitted). "Reasonable diligence encompasses a duty to inquire with the principal." *Id.*

Plaintiff sets forth in Mr. Beck's Affidavit (Docket No. 26) offered in Support of Plaintiff's Opposition to Defendant's Motion, that both WSB and Mr. Kramer led Mr. Beck to believe that Mr. Kramer was an agent for WSB with respect to the loan. *Affid. Beck*, ¶¶ 8 - 9 (Docket No. 26). He attests that WSB's Conditional Loan Approval form, dated January 21, 2005, directs him to "contact

**Memorandum Decision and Order - 34**

Americor Lending Group, Inc. if you have any questions about this Conditional

Loan Approval." *Id.* at ¶ 8, and Exh. C attached.  He also points out that WSB's

Commitment Letter directed him to contact Americor "with any questions

pertaining to this commitment and with your decision to approve or decline our

offer." *Id.,* and Exh. A attached.  Because of WSB's directions that he  contact

Americor with any questions regarding the loan commitment, or his decision to

approve or decline WSB's offer, Beck contends that he understood that Mr. Kramer

had authority to act as WSB's agent in relation to the loan.  *Id.* at ¶  9.          Mr.

Beck's affidavit raises genuine issues of fact regarding whether Mr. Kramer was or

was not acting as WSB's agent, and as to what type of agent.  For the purposes of

Defendant's Motion for Summary Judgment, Plaintiff is entitled to the reasonable

inference that, based on WSB's directions on its Conditional Approval Loan and

Loan Commitment forms, Mr. Kramer had some type of express authority from

WSB relating to receiving "any questions pertaining to the commitment" and Mr.

Beck's "decision to approve or decline [the] offer" which may reasonably include

the implied authority to provide a response to any such questions.  *See Podolan*,

123 Idaho at 944, 854 P.2d at 287.

Further, whether WSB's promotional rate offer was "deceptive," particularly

in view of WSB's written communications and Mr. Kramer's representations to Mr.

**Memorandum Decision and Order - 35**

Beck, is also a question of fact. According to Mr. Beck, WSB offered a promotional  "current" CODI rate for the loan – the lower, November 2004 CODI rate – but did not explain, either verbally or in writing, that the November 2004 only applied to the first month of the loan.  Mr. Beck argues, that although the terms of the Note are accurate in defining the "current Index" as the one that was current at the time of the rate readjustment, WSB applied different meanings to the word "current Index" in its promotional materials versus its loan documents.  Mr. Beck states that the promotional rate resulted in a total savings of approximately $80 for a $448,500 loan, and a long-term loss because other interest rates available at the time were lower.  Accordingly, Mr. Beck argues that the WSB's conduct with respect to the promotion was false and/or deceptive under the ICPA.

Plaintiff's position is tenuous.  Taken to its logical conclusion, Plaintiff seems to be taking the position that WSB promised Plaintiff a non-adjustable loan since the CODI rate was the only factor in the interest rate formula that was "adjustable." This would, of course, be inconsistent with the very nature of an adjustable rate loan.  However, Plaintiff sets forth facts that, construed in a light most favorable to the Plaintiff, raise genuine issues of material fact regarding the manner in which WSB promoted its product. The purpose of the ICPA is "to protect both consumers and businesses against unfair methods of competition and

**Memorandum Decision and Order - 36**

unfair and deceptive practices in the conduct of trade or commerce, and to provide efficient and economical procedures to secure such protection." I.C. § 48-601. It is intended to be remedial, and construed liberally. *Id.*; *Fenn v. Noah*, 142 Idaho 775, 780, 133 P.3d 1240, 1245 (2006). Accordingly, Defendant's motion for summary judgment on Claim II is also denied.

**ORDER**

For the reasons set forth above,

IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment (Docket No. 15) is DENIED in part, and GRANTED in part; consistent with the Court's memorandum decision above, Plaintiff is entitled to summary judgment on Claim II;

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Affidavit of Sharon Mason (Docket No. 28) is DENIED in part and GRANTED in part;

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (Docket No. 20) is DENIED.

DATED:  **January 8, 2009**

B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order - 37**